United States Court of Appeals

For the Eighth Circuit

_____

No. 20-2017
_____

Michael Vinh

*Plaintiff - Appellant*

v.

Express Scripts Services Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: April 14, 2021
Filed: August 3, 2021
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellant Michael Vinh appeals the district court's[1] adverse grant of summary judgment on his discriminatory discharge and failure to accommodate claims under the Minnesota Human Rights Act (MHRA) against his former

---

[1] The Honorable Susan R. Nelson, United States District Judge for the District of Minnesota.

employer, Express Scripts Services Company (Express Scripts).  Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Vinh began his employment with Express Scripts in May 2000, when he was hired as a customer services representative.  Vinh's position twice changed, first to Contact Center Associate and then to Contact Center Supervisor, before he was promoted to Project Manager in 2006 and ultimately promoted to Senior Project Manager in 2007.  Vinh served as a Senior Project Manager until his termination in May 2016.  As a Senior Project Manager, Vinh's job description provided:

> This position would provide direction and management related strategic projects across multiple sites.  This role is responsible for mentoring in the development of continuous improvements that drive business value.  This position will be a key resource for training, mentoring and developing change agents, leading Value Stream Mapping and Kaizen events, implementing Visual Workplace and Standard Work at the site level and tying initiatives to the Organizational strategy.  This person may manage cross-functional strategic planning projects, provide content/idea creation, develop strategic planning communications (verbal and written), and be responsible for managing and synthesizing strategic topics.  They will be responsible for development and maintenance of site continuous improvement plans, communication plans, schedules and estimates.

R. Doc. 48-1, at 77.  The job description also included the minimum qualifications of "[e]xtensive project management skills" and "[s]trong verbal and written communication and organizational skills."  R. Doc. 48-1, at 78.  During his deposition, Vinh testified that he understood his job to generally entail these skills and roles, although he noted that he did not work on the specified projects of Value Stream Mapping, Kaizen events, or implementation of Visual Workplace and Standard Work.  R. Doc. 43-1, at 20-21.

-2-

Appellate Case: 20-2017     Page: 2      Date Filed: 08/03/2021 Entry ID: 5061396

In 2013, Vinh's performance reviews began to reflect performance deficiencies. Vinh's 2013 performance review stated that "2013 was a challenging year" for Vinh and that he needed to "significantly improve his communication skills and take greater initiative," or his potential with the company would be limited. R. Doc. 43-1, at 104. Vinh's supervisor also rated his strategic thinking skills poorly and noted that Vinh "struggled to convey [his ideas] effectively, in both written and in oral communication" and that he "tended to 'lose' or confuse meeting participants during regular . . . conference calls." R. Doc. 43-1, at 108-09. The record reflects that Vinh's performance improved in 2014, but beginning in January 2015, Vinh's new supervisor, Ashly Huber, began weekly one-on-one meetings with Vinh during which she would contemporaneously document numerous instances of deficient performance. Huber took maternity leave from June 1, 2015, to the end of August 2015, during which Brian Hogg took over as Vinh's temporary supervisor.

In early July 2015, Hogg began preparing Vinh's mid-year performance review. Because he had not supervised Vinh until June, he relied on Huber's evaluations, supplemented by his own observations from his limited period of working as Vinh's supervisor. Both Huber and Hogg noted performance deficiencies, with Hogg's review noting that Vinh needed to display more leadership skills, be more proactive in finding ways to improve his critical thinking skills, and work on attention to detail. Vinh's final mid-year ranking placed Vinh as the lowest rated employee among his peers.

During this same period, Vinh began experiencing severe neck pain that required him to take intermittent leave through June, July, and August 2015, which Express Scripts approved. In mid-July 2015, Vinh was diagnosed with complex cervical dystonia, a degenerative condition that causes uncontrollable spasms in the neck muscles. There is no known cure for cervical dystonia, and it may be exacerbated by stress. Treatments for the condition generally include light therapy, physical rehab, or Botox. Although Vinh's performance review occurred in the same time period that he began experiencing symptoms of cervical dystonia, Vinh testified that he did not recall his condition having any impact on his work in 2015 apart from

-3-

the approved time off and that no one at Express Scripts ever expressed any objection to Vinh taking time off for his condition.

In late August or early September 2015, Huber returned from maternity leave and was informed that Vinh had been out on intermittent leave due to health reasons. Huber called Vinh to discuss his mid-year performance review and the need to place him on a performance improvement plan. Huber notified Vinh of the possibility that he would be terminated if he did not follow the improvement plan. Shortly after the call, Vinh notified Huber that he had been diagnosed with cervical dystonia and that he would potentially need a longer leave of absence. This was the first time that Vinh disclosed his diagnosis to anyone at Express Scripts. In early September, Vinh's treating physician, Dr. Spurrill, recommended that Vinh go on extended leave. Express Scripts approved the leave on September 30, 2015.

In late January 2016, Dr. Spurrill approved Vinh to return to work. Vinh returned to work on February 15, 2016. Prior to Vinh's return, Dr. Spurrill completed a Return to Work form, a template prepared by Express Scripts, which detailed the restrictions that Vinh would be under from the time he returned to work until April 8, 2016. The Return to Work form imposed the following restrictions: Vinh was limited to a six-hour workday; was permitted to stand or walk once per hour; was allowed to sit for up to only one hour at a time; and was under basic lifting and carrying restrictions but could still use his hands for typing or other fine motor skill tasks. Dr. Spurrill also included the statement that "Our main concern is sitting at the computer staring at the screen. The consistent visual stimulation and stress are top priority." Dr. Spurrill later testified that this comment was intended to convey that stress was the primary concern but noted that his other restrictions were aimed at alleviating the risk of stress. Dr. Spurrill also testified that this comment did not require anything additional from Express Scripts, noting that it was a statement of general concern that was addressed by the various restrictions he was already imposing.

Express Scripts informed Vinh that it would accommodate the restrictions set forth by Dr. Spurrill. Dr. Spurrill testified that, to the best of his knowledge, Express Scripts complied with all of the restrictions in the Return to Work form, which included the statement regarding Dr. Spurrill's main concern regarding Vinh sitting at his desk staring at a computer screen. The most significant dispute between the parties regarding Vinh's return to work and his necessary accommodations involves a standing desk. Vinh asserts that he requested a standing desk from Huber as an accommodation, and Huber stated that she would look into it. Huber testified that she had no recollection of Vinh requesting a standing desk and that she did not request a standing desk be issued to Vinh. Vinh admits that he made the request to Huber only verbally and that he did not make the request of any other person. However, claim notes from Vinh's FMLA file do reflect that at some point a standing desk was mentioned as an accommodation. Dr. Spurrill testified that he did not specifically list a standing desk as one of the restrictions required for Vinh's return to work because his primary focus was to ensure that Vinh changed positions throughout the course of the day, and he believed the listed restrictions achieved this aim without reference to a standing desk. Dr. Spurrill also testified that he does not believe that Express Scripts failed to address any specific request related to Vinh's restrictions.

Following Vinh's return to work, Huber discussed with Vinh his 2015 annual review and performance rating. Because Vinh had been on leave from September 2015 to February 2016, his annual review was essentially the same as his mid-2015 review. Huber and Vinh met to discuss placing Vinh on the performance improvement plan they had discussed before his leave. The plan noted Vinh's performance deficiencies and included four objectives, all relating to accuracy and avoiding discrepancies. The performance improvement plan did not expressly mention Vinh's limited working hours, but Huber worked with Vinh to make sure the plan conformed with Vinh's restrictions and checked with Human Resources regarding the viability of the improvement plan given Vinh's limitations. Vinh and Huber met often throughout the duration of the performance improvement plan, which ran from March to the end of April, during which Vinh received continued

feedback about the poor quality of his written communications[2] and his other continued deficiencies.

On April 18, 2016, Vinh was cleared to return to work full-time without any restrictions. At the same time, as the improvement plan period was drawing to a close, Huber consulted Human Resources about how to proceed with Vinh's termination. Huber provided a detailed summary of Vinh's performance under the improvement plan, noting that while Vinh had demonstrated some improvement, he still fell short of the goals outlined in the plan. Huber ultimately submitted a request for authorization to terminate Vinh based on his failure to satisfactorily complete the performance improvement plan, again detailing Vinh's performance deficiencies and his failure to improve under the performance improvement plan. Following approval from Human Resources, Express Scripts terminated Vinh on May 4, 2016.

In 2018, Vinh filed suit against Express Scripts in Minnesota state court, asserting disability discrimination and failure to accommodate claims under the MHRA stemming from his termination. Express Scripts removed the action to federal court based on diversity jurisdiction and subsequently moved for summary judgment. The district court granted summary judgment in favor of Express Scripts. On the discriminatory discharge claim, the district court applied the McDonnell Douglas[3] burden-shifting framework and determined that Vinh failed to establish a prima facie case. Central to this determination was the district court's conclusion that Vinh failed to demonstrate that he was replaced by a non-disabled individual, having presented no evidence to this effect. Further, the district court determined that, even if Vinh could make a prima facie case, Express Scripts had a legitimate,

---

[2]The record reflects that, in one email to Huber, Vinh stated the following: "I know we discussed on numerus occasion on this in the past. When the business has not access the savings do, we want to show as a committed amount? It would be consider a line of sight item, but the savings have not been blessed." R. Doc. 44, at 4.

[3]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

non-discriminatory reason for terminating Vinh based on his performance deficiencies, and finally, that Vinh failed to raise a genuine issue of material fact regarding a purportedly pretextual reason for Vinh's termination. As to the failure to accommodate claim, the district court applied a modified burden-shifting framework and determined that Vinh failed to present a prima facie case because he failed to show he was a qualified person capable of performing the essential functions of his job with reasonable accommodations. The district court further concluded that Vinh failed to show that Express Scripts failed to provide Vinh a reasonable accommodation. Vinh now appeals the adverse grant of summary judgment.

II.

Vinh asserts that the district court erred in granting summary judgment in favor of Express Scripts on both his discriminatory discharge and failure to accommodate claims. "We review de novo the district court's grant of summary judgment, 'viewing all evidence and drawing all reasonable inferences in favor of the non-moving party.'" Odom v. Kaizer, 864 F.3d 920, 921 (8th Cir. 2017) (citation omitted). "Summary judgment is proper when there is no genuine dispute of material fact and the prevailing party is entitled to judgment as a matter of law." Scudder v. Dolgencorp, LLC, 900 F.3d 1000, 1004 (8th Cir. 2018) (citation omitted). We address each of Vinh's arguments in turn.

A.

As to Vinh's disability-discrimination claim, Vinh asserts that the district court erred in granting Express Scripts summary judgment because it erroneously required him to prove that he was replaced by a non-disabled person, and the record presents genuine issues of material fact regarding whether Express Scripts's explanation for terminating Vinh was a pretext for discrimination. The MHRA prohibits an employer from discharging an employee because of disability "[e]xcept when based on a bona fide occupational qualification." Minn. Stat. § 363A.08

-7-

subdiv. 2. In a disability discrimination claim under the MHRA, a plaintiff may allege discrimination by providing direct or circumstantial evidence. Where, as here, the plaintiff provides circumstantial evidence, we apply the McDonnell Douglas burden-shifting framework to consider the claim. Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 788 (8th Cir. 2004). Under this framework, the plaintiff must establish a prima facie case before the burden shifts to the employer to "rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action." Id. (citation omitted). If the employer meets this burden, the burden shifts back to the plaintiff to "demonstrate that the non-discriminatory reason is actually pretextual." Id. "To establish a prima facie case of disability discrimination, [the plaintiff] must show that '(1) [he] has a disability within the meaning of the MHRA . . . , (2) [he] is qualified to perform the essential functions of h[is] job, with or without reasonable accommodation, and (3) [he] suffered an adverse employment action because of h[is] disability.'" Brunckhorst v. City of Oak Park Heights, 914 F.3d 1177, 1183 (8th Cir. 2019) (second, fourth, fifth, sixth, and seventh alterations in original) (citation omitted).

The parties devote much of their briefing to what a prima facie case of disability discrimination requires, specifically whether a plaintiff is required to show that he was replaced by a non-disabled person. However, we need not resolve that dispute because, even assuming that Vinh established a prima facie case, Express Scripts has proffered a legitimate, non-discriminatory reason for Vinh's termination and Vinh has failed to provide sufficient evidence of pretext. As to the legitimate, non-discriminatory reason for Vinh's termination, Express Scripts's explanation for Vinh's termination was his history of deficient performance and failure to satisfactorily complete the performance improvement plan, which satisfies Express Scripts's burden. See Fiero v. CSG Sys., Inc., 759 F.3d 874, 878 (8th Cir. 2014) ("[P]erformance-related concerns constitute legitimate, non-discriminatory justifications for discharging [an employee]."); Doucette v. Morrison Cnty., 763 F.3d 978, 983 (8th Cir. 2014) ("A legitimate reason for discharge may include the plaintiff's lack of improvement 'in the specific areas in which she was counseled.'" (citation omitted)).

-8-

Regarding Vinh's burden to show pretext, "[i]n order to avoid summary judgment under the McDonnell Douglas third step, the . . . plaintiff must put forth sufficient evidence for the trier of fact to infer that the employer's proffered legitimate nondiscriminatory reason is not only pretext but that it is pretext for discrimination." Wagner v. Gallup, Inc., 788 F.3d 877, 886 (8th Cir. 2015) (alteration in original) (citation omitted). Vinh attempts to meet his burden of showing pretext by asserting that the record reveals several facts that demonstrate Express Script's discriminatory motivation for his termination, including that he was placed on a performance improvement plan after going on leave, that the plan did not include his Return to Work restrictions, that he was not provided a standing desk, that Huber cancelled meetings with him while he was on the performance improvement plan, that he did not receive feedback, and that Huber asked Human Resources how to proceed with terminating Vinh shortly after Vinh was cleared to return to work with no restrictions. But Vinh "must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." Wilking v. Cnty. of Ramsey, 153 F.3d 869, 874 (8th Cir. 1998) (citation omitted).

Viewing the evidence in the light most favorable to Vinh, he has failed to create a factual dispute as to pretext. The record is replete with evidence concerning Vinh's deficient performance, none of which was related to his disability or his period of leave. Vinh's poor performance reviews began well before the onset of his condition, he received the lowest performance rating of any of his peers before the onset of his disability, he and Huber discussed the need for him to be placed on a performance improvement plan prior to the beginning of his leave, and Huber verified with Human Resources that the performance improvement plan did not impact any of Vinh's work restrictions. And Vinh himself testified that his condition did not have any impact on his work performance in 2015, aside from his approved leave time. Further, Vinh's own physician testified that Express Scripts complied with all of the restrictions required for Vinh's return to work and that a standing desk was not included in the workplace accommodation which the doctor had directed. Given this record evidence, Vinh has failed to present sufficient evidence to

demonstrate that Express Scripts's stated reason for his termination was not truthful and was merely a pretext for discrimination. See id. ("While reviewing the employer's articulated reasons for discharge and the plaintiff's refutation thereof, we must keep in mind that '[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions. . . . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.'" (alterations in original) (citation omitted)). The district court thus did not err in granting summary judgment to Express Scripts on Vinh's disability discrimination claim.

B.

As to Vinh's failure-to-accommodate claim, Vinh asserts that the district court erred in granting Express Scripts summary judgment because it improperly required Vinh, rather than Express Scripts, to prove that Vinh could perform essential functions of his job; Express Scripts failed to meet its burden of showing Vinh could not perform the essential functions; the essential functions of Vinh's job were insufficiently defined to be able to assess whether he could meet them; and the district court made improper factual findings by determining that the performance improvement plan took into account Vinh's work restrictions and that Express Scripts provided Vinh a reasonable accommodation without the standing desk. We are unpersuaded by Vinh's arguments.

Under the MHRA, "it is an unfair employment practice" for an employer "not to make reasonable accommodation to the known disability of a qualified disabled person . . . unless the employer . . . can demonstrate that the accommodation would impose an undue hardship on the business." Minn. Stat. § 363A.08 subdiv. 6 (2014). The MHRA defines a qualified disabled person as "a disabled person who, with reasonable accommodation, can perform the essential functions required of all applicants for the job in question." Id. § 363A.03 subdiv. 36(1). In evaluating a claim that an employer has failed to make a reasonable accommodation to a qualified disabled person, we apply a modified burden-shifting framework, which differs from

-10-

the traditional McDonnell Douglas burden-shifting framework. See Collins v. Abbott Lab'ys, Inc., 972 F.3d 976, 978 (8th Cir. 2020). Under this framework, the plaintiff must first make "a facial showing that reasonable accommodation is possible and that the accommodation will allow [him] to perform the essential functions of the job," before the burden shifts to the employer to show that it is unable to accommodate the plaintiff. Id. (alteration in original) (citation omitted).

First, Vinh's argument that the district court erroneously placed the burden on him to prove he could perform the essential functions of his job is immaterial. Regardless of whether Vinh or Express Scripts bore the burden, the record clearly demonstrates that Vinh was not capable of performing the essential functions of his job, with or without an accommodation. Vinh's assertion that the essential functions of his position were not clearly established is simply unsupported by the record. Vinh's position had a detailed job description, and any assertion he makes regarding whether he was actually required to perform each task listed in the job description is inconsequential because it is undisputed that communication skills and strategic and critical thinking were essential functions of his position, and both were areas in which Vinh continually struggled. Further, there is no evidence that Vinh would be capable of performing the essential functions of his position with an accommodation. Again, the record is replete with evidence that Vinh's communication capabilities and his grasp of the strategic and critical thinking skills necessary for his position were deficient, and that these deficiencies predated the onset of his disability and persisted after his leave. There is no evidence in the record suggesting that Vinh's performance issues were linked to his disability, and the record simply does not support that an accommodation would have allowed Vinh to perform the essential functions of his position. We thus conclude that Vinh has failed to make the facial showing required for his failure to accommodate claim. Because we conclude that Vinh failed to make a facial showing as to this claim, we need not consider his additional argument that the district court engaged in impermissible fact finding regarding the contents of the performance improvement plan and the reasonableness of the accommodation provided to Vinh. The district court thus did not err in

-11-

granting summary judgment to Express Scripts on Vinh's failure to accommodate claim.

## III.

We affirm the judgment of the district court.

_____